## JOHNSON v. MACHINE WORKS.

### (Filed June 19, 1902.)

CONTRACTS—*Breach—Salesman.*

> Where a company employs a salesman for one year and he is to report each day his whereabouts and send in expense account at the end of each week, the failure to comply in this respect is such a breach of the contract as to justify his discharge, and his continuance for a while after the breach does not affect the right to discharge him.

MONTGOMERY, J., dissenting.

ACTION by G. S. Johnson against E. Van Winkle Gin and Machine Company, heard by Judge *H. R. Starbuck* and a jury, at January Term, 1902, of the Superior Court of MECKLENBURG County. From a judgment for the plaintiff, the defendant appealed.

*Maxwell & Keerans,* for the plaintiff.
*Burwell, Walker & Cansler,* for the defendant.

FURCHES, C. J.   The plaintiff was employed by defendant as a travelling salesman of machinery, for one year. The terms of the contract were that the defendant was to pay the plaintiff $75 per month and necessary expenses; and the defendant was to furnish the plaintiff with addressed postal cards and blanks for the purpose, and the plaintiff was to write every day on one of the postal cards, showing the dedefendant where he was. And at the end of each week the plaintiff was to report, on the blanks furnished him, his past week's expenses. The defendant furnished the postal cards and the blanks, but the plaintiff failed to write and mail the postal cards showing his whereabouts, and failed to make the weekly reports as he was to do under the contract. The contract time was to commence on the first of February; and on

the 20th of February we find him writing to the defendant, in answer to a letter from the defendant demanding that the plaintiff should comply with his contract by writing the postals and sending in the reports, saying that he (plaintiff) had never had to do this before, and that it was not necessary that he should do so.

The next correspondence we have between the plaintiff and the defendant is a letter of the 16th March, from the defendant, demanding that the plaintiff should write the postals and send in the reports as he contracted to do. But the plaintiff still refused to write the postals or to make the weekly reports of expenses, etc. And on the 20th of April the defendant discharged the plaintiff, saying it would pay him up to the first of May, which it did.

But the plaintiff brings this action to recover $75 per month from the first day of May to the first of October, when he says he got other employment. These conditions in the contract were important to the defendant, that it should know where the plaintiff was, that it might communicate with him, and that it might know what his expenses had been.

This action is not brought to recover for work and labor done, but for work and labor *not* done—for a breach of the contract on the part of the defendant in wrongfully discharging the plaintiff. In order to enable the plaintiff to recover, he must show two things: (1) That he has complied with the contract; (2) that the defendant has violated the contract by wrongfully discharging him.

On the argument it was admitted that the plaintiff had not kept the contract; that he had not written the postal, nor made the weekly report, as he contracted to do; and the defendant would have had the right to discharge the plaintiff, if the defendant had not condoned or waived the breach. But the plaintiff contends that the defendant has done this, and therefore he is entitled to recover for services *not performed,* upon

a contract that he had broken.    The grounds alleged by plaintiff for this contention is, that the defendant paid the plaintiff's salary for March, and paid his expenses up to that time. It seems to us that the plaintiff is making mighty poor return for the favor the defendant did in paying him for more time than he had served.    But the defendant did right in paying the plaintiff for the time he served, though it might have discharged him sooner.    And we think that continuing the plaintiff in the service of the defendant was a waiver of the breach to that extent, but no further.    The breach of the contract by the defendant was a *continuing* breach—was persisted in and *continued by the plaintiff after the payment* on the first of March; and how such payments, made the first of March, can be a waiver of the breach made *after that time* is more than we are able to see.

The case, then, is this: The plaintiff has brought an action to enforce a contract that he has broken, against the defendant, when it has not broken the contract.    We can not see how the plaintiff is entitled to recover, on his own showing. There is

Error.


DOUGLAS, J.    I concur in the opinion of the Chief Justice. I do not see any waiver on the part of the defendant, either express or implied, of the terms of the contract requiring daily and weekly reports by the plaintiff.    On February 13, the defendant wrote to the plaintiff, insisting upon such reports.    On February 20, the plaintiff answered, objecting to making such reports, stating his reasons and expressing the hope that his course would be satisfactory to the defendant. Upon March 16, the defendant again wrote to the plaintiff, insisting upon daily reports.    Upon the continued refusal or neglect of the plaintiff to make such reports, the defendant, on April 20, discharged him, offering to pay him up to the

1st of May. I do not think this was an unreasonable delay on the part of the defendant. It had admittedly the right to discharge the plaintiff immediately upon receipt of his letter of refusal, but it took the fairer course of giving him an opportunity to mend his ways if he saw fit to do so. It does not appear that the plaintiff was damaged in any way by the failure to discharge him at an earlier date, either by incurring any additional personal expense or losing the opportunity of obtaining other employment. The mere fact that the defendant did not discharge him immediately upon the receipt of his monthly report of April 1, to my mind, means nothing. The defendant was doubtless glad to get the report, and accepted it probably upon the theory that one-thirtieth of a loaf was better than no loaf. The plaintiff was receiving its money as salary and spending its money as expenses, apparently without corresponding benefit, and it is natural that it should wish to be kept advised as to where he was and what he was doing.

MONTGOMERY, J., dissenting. The jury found, under instructions not excepted to by defendant appellant, that the plaintiff was employed by defendant to sell machinery for the term of a year, beginning on the first day of February, 1901, at a salary of $75 per month. On the 20th April, the defendant discharged the plaintiff, but offered to pay him his salary for that month. This action was brought to recover the balance of the salary up to the 15th October, when the plaintiff received other employment. It is not denied that on the 13th of February the defendant sent out to the plaintiff, by mail, a lot of self-addressed postal cards, with instructions to the plaintiff to write daily reports as to where he might be, and also to send in a weekly expense account in the books which had been sent to the plaintiff for that purpose. They were reasonable instructions and requirements, and the plaintiff ad-

mits that if another agreement, and a different one, had not been made, or at least if those instructions had not been subsequently waived by the defendant, his discharge would have been lawful. But he contends that such waiver was made, impliedly at least, by a subsequent and different arrangement made between the defendant and himself. He introduced a letter of date the 20th February, written by himself in answer to that of defendant of date the 13th of the same month, in which he said: "Yours of the 13th to hand and contents carefully noted. Referring to expense account, would say that I have always kept my expense account in a plain blank book, and at the end of each month transfer it to a sheet, take a copy in letter book and send it in. I have done this with all the concerns I have ever travelled for, and I find it more satisfactory for them and far more so for myself, as I have an exact copy of every item. Whereas, if I send it every week in the book, I will either have to keep two books or be without any record for myself. I think when I send in my report for this month you will agree with me. The same way about letter-writing. I like to keep a copy of everything of importance, but in future will try to keep you better posted as to my whereabouts. Rest assured I will always look after your interest. I will be glad if you will give me some information as to prices per ton on oil-mills. While I have no orders for you thus far, I am satisfied we will have a good trade. I will be around Charlotte for several days. Hoping this will be satisfactory, I am," etc. And the plaintiff further testified that he made monthly statements according to the tenor of his letter, on the first days of March, April and May, and that the defendant received the same without objection or exception. On the 15th of March, however, the defendant wrote to the plaintiff as follows: "We have written you at different times in regard to hearing from you daily, and sent you self-addressed postal cards, and respectfully in-

sist on the same having your attention. We hear very seldom from you, and know very little of what you are doing, all of which is very unsatisfactory." Up to the 15th of March, then, there was no change in the instructions which had been given to the plaintiff when he was first employed, to the effect that he would write daily as to where he might be, and the plaintiff was on notice that he would be required to comply with that request. Afterwards, the plaintiff failed to make such daily reports as were required, and on the first of April a monthly one was made, according to the plaintiff's letter of the 22d of February, which the defendant received, and to which it made no objection. That the plaintiff was not dismissed immediately upon the making of the report of April 1, but was retained in the defendant's service afterwards, was not a waiver of the right to discharge, but his retention under such circumstances was evidence amounting to a presumption of waiver, and unless it was rebutted by facts sufficient to show a reasonable cause for the delay in dismissing the plaintiff at an earlier day, it was the duty of the Court to instruct the jury that there was a waiver. Wood on Master and Servant, Secs. 121 and 123 ; Rogers on Domestic Relations, 760.

The defendant offered no evidence on that point, and his Honor gave a proper instruction when he told the jury that if the plaintiff failed to comply with the defendant's instructions to him as to the daily reports and monthly report, or either of them, the defendant had the right to discharge him, and they should answer the third issue (Did the defendant wrongfully discharge the plaintiff ?), "No," unless they found that the conduct of the defendant was such as to make the plaintiff reasonably believe that the instructions were not relied on ; in which case there was a waiver by the defendant of compliance with the instructions.

The other exceptions are embraced in the one to that part of

the charge I have thus discussed, and I see no error in the instructions upon which they were made.